## FOREST CITY INSURANCE CO.

### v.

### GEORGE R. LEACH ET AL.

1. INSURANCE—CHANGE IN TITLE.—A change of title in violation of the express terms of a policy of insurance would render it void.

2. RATIFICATION.—A party can not repudiate the acts of another done in his interest and on his behalf and at the same time retain the fruits of the act.

APPEAL from the Circuit Court of Edwards county; the Hon. C. C. BOGGS, Judge, presiding. Opinion filed July 10, 1886.

On the 19th day of April appellant issued its policy of insurance No. 13,545, to Leach Bros., on a dwelling house and furniture therein for $1,000. The loss was made payable to Lewis E. Leach, George R. Leach, Augustus Leach, and Horace Leach, "as their claim should appear." There was a written application made for this policy, signed Leach Bros.

The property was insured for five years, running from April 14, 1880. The loss occurred April 15, 1882. By the terms of the policy the application is made a part of the contract. It also provides that if the property insured be sold, transferred, or any change of title should take place, the policy should be void.

It is averred in the declaration that there was no transfer of title after making the policy, and that the title and possession remained at all times up to the date of the loss in the plaintiffs. Numerous pleas were filed, the second and third averring settlement and release, the fifth averring a transfer of title by two of plaintiffs to Augustus Leach, another plaintiff, without the consent of the appellant. The general issue was also filed. The application referred to in the policy contained these questions and answers:

Q. Are you the absolute owner of the property proposed to be insured? A. Yes.

Q. Is the title to the land on which said buildings are situated in your name? A. Yes.

The following stipulation appears in the bill of exceptions: "It is admitted in evidence that Lewis Leach and Horace Leach, two of the parties herein, did on the 14th of August, 1881, after the issuing of said policy and before the destruction of the property by fire, by deed convey all their title and interest in the said land, upon which the property insured was situated, to Augustus D. Leach." The following receipts were offered and received in evidence on behalf of appellant without objection:

$20.00.                       Bone Gap, Ill., May 2, 1882.

Received of the Forest City Insurance Company, of Rockford, Illinois, twenty dollars in full for all demands for loss or damage by fire and lightning to the property insured under policy No. 13,545 and destroyed by fire on the 13th of April, 1882. Leach Bros., by Augustus D. Leach.

Be it known that I, Augustus D. Leach, et al., of the town of Bone Gap and county of Edwards, in the State of Illinois, for and in consideration of the sum of one hundred and eighty dollars to me paid (the receipt of which is here confessed) by

Forest City Ins. Co. v. Leach.

the Forest City Insurance Company, of Rockford, Illinois, upon a full settlement and adjustment this day made between me and said company of all and every claim and demand, action and cause of action, which I have or might or could make against said company by reason of or growing out of a certain contract of insurance with said company, known as policy No. 13,545, bearing date April 14, 1880, and said company is hereby relieved and discharged from said contract, and of all and every liability under the same to me, and the said contract is canceled and at an end. (Signed) LEACH BROS., by Augustus Leach.

Replication to the second and third pleas deny the authority of Augustus Leach to make these receipts or releases, and each of the appellees swear on the trial that he had no such authority. Augustus, however, testifies that he signed the receipts and got the money on them, and he says: "It was by consent of all of us that we should use the $180 and the $20 in building the new house. It was a week or so after I received the $180 that I told the boys, and it was then that we used the money. We used all the money in the house by consent of all of us."

George Leach also swears: "It was by agreement of all of us that we applied the $180 in building the new house." Both swear that the money was not used until after Augustus had offered to return it, and appellant had refused to receve it back and return the receipt. This latter testimony relates only to the $180.

Mr. J. M. CAMPBELL and Mr. R. P. HANNA, for appellant.

Mr. H. TOMPKINS, for appellee.

WILKIN, J. This case must be reversed because of the change of title in violation of the terms of the policy, and because the evidence shows a settlement and payment in full of any claim appellees may have had under the policy sued on against appellant. It seems to be conceded that if the express terms of the policy shall control, the change of title admitted to have been made would render it void, and such is un-

questionably the settled law of this State by repeated decisions of the Supreme Court. Dix et al., for use, etc., v. Mercantile Ins. Co., 22 Ill. 277; Home Mutual Fire Ins. Co., of Chicago, v. George Hauskin, 60 Ill. 521; the Equitable Ins. Co. v. Paul H. Cooper, Id. 509.

It is insisted, however, that the clause in the policy prohibiting a transfer of title is rendered nugatory by a parol agreement made with the agent of appellant at the time the application was made, to the effect that the property might be conveyed by appellees among themselves. The authorities cited do not sustain the position assumed. Here the contract between the parties is expressed in the policy. It was delivered to the assured or their father for them long before the change of title was made, and they are chargeable of notice of its contents. If they were not satisfied with it because it failed to conform to the contract they had made with the agent, it was their duty to repudiate it and so inform the company. However, the most ready answer to the argument in support of the position is that there is no evidence of any such agreement on the part of the agent. There was some talk about the title at the time the application was made, but nothing from which it can be said that there was an agreement that the property might be conveyed, much less such proof as would under any circumstances be allowed to overcome the express terms of the written contract. The change of title without the consent of appellant rendered the policy void, and no recovery could legally be had thereon.

If it be admitted that there was no authority, either express or implied, in Augustus Leach to bind the other parties insured by the settlements, or even if it be conceded that he was overreached, so that the settlements were not in the first instance binding upon himself, yet the subsequent conduct of the parties in the appropriation and use of the money received by him amounts in law to a ratification of the settlements.

No principle of law is better settled or more in consonance with reason and justice than that a party can not repudiate the acts of another done in his interest and on his behalf, and at the same time retain the fruits of that act, or that a contract

can not be rescinded and the consideration or any part of it retained.

As to the $20 paid on the 2d of May, 1882, there is no pretense of an offer to return, nor that it was not used by all the plaintiffs with a full knowledge of all the facts and circumstances under which it was received.

It is admitted that the $180 was also used by all of the parties, after being advised by Augustus as to what he had done. The only excuse made for thus retaining the money and refusing to abide by the contract is that Augustus had offered to return the check and that appellant had refused to receive it and return the receipt. It nowhere appears that the other brothers offered to return the money, or that they gave appellant any notice whatever that they repudiated the act of Augustus in making the settlements or that he had no authority to act for them.

Neither is there any evidence to show that Augustus Leach at any time informed the company of the ground upon which he claimed the right to rescind the contract of settlement. Indeed it is difficult to discover from the evidence upon what ground he could have placed it, but certainly it does not appear that appellant was at any time informed that the authority of Augustus was denied, and an offer to return the money received on that ground. Having received and appropriated the benefits of the contract, they must be held to a compliance with its terms, by which they release all right of action on the policy.

Holding as we do that the judgment of the circuit court must be reversed for the reason stated, and that there is no cause of action remaining, the case should not be remanded. It is unnecessary to notice other alleged errors or to further review the record.

Reversed.