## THE ILLINOIS FIRE INSURANCE COMPANY

*v.*

## MATTHEW STANTON.

1. INSURANCE—*mortgagor—mortgagee.* The mortgagor, as well as the mortgagee, has an insurable interest in the real estate insured. And when the mortgagor effects an insurance of the property, "loss, if any payable" to the mortgagee, the former holds the legal title, and when a loss occurs, the mortgagor may maintain an action on the policy in his own name for the use of the mortgagee; but as was held in the case of the *New England Fire and Marine Insurance Co.* v. *Wetmore,* 32 Ill. 221, an assignee of a policy can not sue in his own name.

2. PROOF OF LOSS. Where a party produces the policy in his name, and makes the proof of loss, he thereby makes a *prima facie* case entitling him to recover.

3. SALE OF THE PROPERTY—*without consent of company.* Where a plea averred that such a policy contained a condition that on the alienation or sale of the property insured, the insurance should cease and be void, unless the policy should be duly assigned or confirmed by the consent of the directors, previous to the loss, and no policy should be regarded as assigned, unless the consent of the directors be certified thereon by the secretary of the company, and it was averred that the mortgagor, to whom the policy was issued, sold the premises to another person without the consent of the directors, but the plea failed to aver that the sale was made before the loss occurred, and it failed to aver that the directors did not confirm the same: *Held,* the plea was bad on demurrer, as it is not essential to the validity of such assignment that consent shall be had before the sale, as it will be sufficient if had before the loss occurs.

4.  PLEADINGS—*declaration—plea.*  A bad plea can not be aided by reference to the declaration.  A demurrer to a bad replication will be carried over it and sustained to a bad plea, as a demurrer is generally carried back and sustained to the first defect in the pleadings.

5.  NOTICE—*to agents—its effect.*  Where agents of an insurance company were applied to for consent to a conveyance of the insured property, and the policy contained such a condition as that set out in the plea, and they consented, and said the policy would be good until it could be received from another place, and the consent indorsed, and it appeared the agents had been in the habit of giving such consent, and the company had recognized its validity : *Held,* that the company must be bound by the consent of the agents thus given.

6.  FORFEITURE—*declaration of.*  A conveyance of the insured property, without the consent required by such a condition in a policy, would authorize the company to declare the policy forfeited ; but as no steps were taken to declare it, and as the local agents gave their consent to the transfer of the property, the company is estopped from denying that they assented to the sale of the property.

7.  MUTUAL INSURANCE—*and stock companies.*  Where there is a provision in the charter of a mutual insurance company, that they may receive premiums in money and take risks in the same manner that is done by stock companies, and a person insures his property in the company and pays the premium in money, he can not be held to be a member of the company.

8.  POLICY—*condition in.*  Such a condition as that set out in the plea, in a policy, is inserted for the benefit of the company, and they can waive it like any other condition.  And knowing that it has been violated, and permitting the other party to act on the supposition that they have assented to the act, and have waived the breach, prevents the company from retracting such consent.

APPEAL from the Circuit Court of Peoria county ; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

Messrs. WEAD & JACK, for the appellant.

Messrs. MCCULLOCH, MCCOY & STEVENS, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action of assumpsit, brought by the appellee in the Peoria circuit court, against the appellant, on a policy of

356          ILLINOIS FIRE INS. CO. v. STANTON.     [Sept. T.,

Opinion of the Court.

insurance issued to Matthew Stanton, on a mill and distillery building, and the machinery and fixtures therein contained. The amount of the insurance was $3,000, which was, by the terms of the policy, made payable, in case of loss, to John McClellan, who held a mortgage on the premises.

The action is brought in the name of Matthew Stanton, for the use of John H. Bobb, the assignee of the McClellan mortgage. The declaration sets forth the policy sued on, and the several conditions attached thereto, which are specially made a part of the contract of insurance, and avers performance of such several conditions. The defense sought to be interposed, is, that Matthew Stanton sold the insured premises without the consent of the company, and against the terms of the fifteenth condition of the policy.

The appellant filed five separate pleas, upon the four first of which, issue was joined. Without discussing at length the question raised on these four pleas, it is sufficient to say we think the issues were clearly with the appellee on the evidence. That the mortgagor and mortgagee have each a separate insurable interest, has long been held and recognized by all courts, and the law upon that question is too well settled to be now doubted. In this instance the interest only of the mortgagor was insured, but the policy contained a clause, that in case of loss, the money should be paid to McClellan, the mortgagee. The contract being with the mortgagor, the legal title vested in him, but it was for the benefit of the mortgagee. Hence, the suit was properly brought in the name of Matthew Stanton, the assured, for the use of the beneficiary.

In the *New England Fire and Marine Insurance Co.* v. *Wetmore*, 32 Ill. 221, it was held that the assignee could not bring a suit on a policy of insurance in his own name, unless authority was given for that purpose in the act incorporating the company. The rule is founded on the principle, that such instruments are not assignable at common law, or by any provision of our statute, so as to give the assignee the right of action in his own name.

The appellee, by the production of the policy and the proofs of loss, made a *prima facie* case, entitling him to a recovery, and the question arises, do the facts stated in the fifth plea, as the same are therein pleaded, defeat the right of action? That plea alleges non-compliance with the fifteenth condition of the policy; that Matthew Stanton, by his deed, dated April 21, 1866, under his hand and seal, sold and conveyed the property insured, to Adam Stanton, without the company's consent, and in violation of the fifteenth condition of the policy declared on, whereby said policy ceased to be binding and became void. The fifteenth condition referred to, is as follows: "That in all cases, where real and personal property insured by said company shall become alienated, or shall be sold under execution or decree, or the title to the same shall in any manner be transferred or changed, or of any undivided interest therein, such insurance shall cease and be void, and said company shall not be liable for any loss and damage which may happen to any property after such alienation or change, as aforesaid, unless the policy issued thereon shall have been duly assigned or confirmed by the consent of the directors to the actual owner or owners thereof, previous to the loss and damage. And no policy issued by said company shall be deemed to have been duly assigned or confirmed, unless the consent of the directors to such assignment or confirmation is certified on such policy by the secretary of said company."

The plea was framed under this condition, and was intended to show a forfeiture of the policy by reason of the sale from Matthew Stanton to Adam Stanton, against the provisions of that stipulation. We do not think the plea is sufficient for that purpose; it does not aver the state of facts which, under that provision of the policy, would work a forfeiture. The plea is obnoxious to two objections; first, it is not averred that the conveyance made to Adam Stanton was made before the loss occurred; and second, it is not averred that the directors of the company, after the alienation, did not confirm the same to the actual owner previous to the loss. It is not indispensable

that the assured should first have the consent of the company to make the sale of the property insured. It is sufficient if the policy issued thereon shall have been duly assigned or confirmed by the consent of the directors, to the actual owner or owners thereof, previous to the loss or damage.

Forfeitures are never regarded with favor by the courts. The party relying on the forfeiture of a contract, must plead every fact necessary to show the forfeiture insisted upon. It does not appear from any averment in the plea, that the alienation took place before the happening of the loss. This was a material averment, and without it the plea is substantially defective. It is averred that the sale of the property was made without the consent of the company, but it is not alleged that the alienation was not subsequently confirmed by the consent of the directors. In no view we have been able to take, does the plea state facts which, standing alone, are sufficient of themselves to show a forfeiture of the policy under the provisions of the fifteenth condition.

It is insisted by the counsel for the appellant, that the plea must be examined with reference to the declaration to which it purports to be an answer. It is averred in the declaration that the policy was made on November 22, 1865, and that the fire occurred on the 11th day of June, 1866. The averment in the plea is, that the premises were conveyed on the 21st day of April, 1866, and the appellee having traversed the allegations thereby presented, a material issue was thus formed. We do not see how a plea of this character is aided by a reference to the averments of the declaration. The appellee, however, did reply to the plea in substance : First, that he did not sell to Adam Stanton as alleged in the plea, upon which issue was joined ; second, that at the time, etc., the appellant did consent to such sale and conveyance, and waived the assignment of the policy to Adam Stanton, and the confirmation and certifying the company's consent on the policy ; and third, that the policy was taken for the benefit of McClellan, and that McClellan assigned the same to C. S. and J. H. Bobb, and that

C. S. Bobb assigned the same to J. H. Bobb, all of which assignments were approved and consented to, and indorsed by the company on the policy.

The appellant interposed a demurrer to the last replication, which was overruled, and the decision of the court overruling the demurrer is now, among causes, assigned for error.

By the well settled principles of pleading, the demurrer would reach back to the first error in the pleadings, and the consequences of a defective pleading will rest upon the party committing the first error, and the appellant can not complain that a defective replication was allowed to stand to a defective plea. If the replication was bad, the plea is also bad, and both would fall together.

By the appellant's rejoinder to the second replication, and the appellee's sur-rejoinder thereto, the following issues were formed:    First, did the appellant have any notice of the conveyance of the insured property to Adam Stanton, before the same was made?    Second, did the defendant waive the assignment of the policy to Adam Stanton?    And third, did the defendant consent to the sale and conveyance from Matthew to Adam Stanton?

Mainly upon these questions the parties seem to have tried the case in the court below.    They were questions of fact, and the finding of the jury on the evidence was against the appellant on these several issues submitted to them.

It can not be doubted, in view of the evidence in the case, that the local agents of the company had notice of the conveyance of the property covered by the policy, from Matthew Stanton to Adam Stanton, at and before the date of the conveyance.    The parties in interest, before the consummation of the sale, went to the local agents and told them they were about to make the transfer.    Other policies on the property were changed by the same agents, in view of the sale, at the request of the parties in interest.    The advice of the agents was asked as to the best course to be pursued with reference to this policy, and the parties were told it would be "good" until it could

360        ILLINOIS FIRE INS. CO. v. STANTON.        [Sept. T.,

Opinion of the Court.

be procured from St. Louis, and the formal consent of the company entered on the policy itself. Before the policy was received, and any formal consent entered thereon, it appears from the evidence the property was destroyed by fire.

It is objected that the local agents had no authority to give the consent of the company, in this manner, to the sale of the property to Adam Stanton. It is in proof, that it had been the custom of the agents to give such consent, and their acts had always been ratified by the company. In giving such consent, the agents were therefore acting within the scope of their authority. Such agents will be held to have such power as the company knowingly permits them to exercise, and the fact that the company ratifies such acts on the part of their agents, will be regarded as evidence of that authority in the agents.

It is manifest from this whole evidence, that if the policy had been received from St. Louis before the loss occurred, the formal consent of the company to the sale would have been entered upon it in pursuance of the agreement with the local agents.

That the sale by Matthew Stanton to Adam Stanton, of the insured property, if not made according to the provisions of the fifteenth condition contained in the policy, would authorize the company to declare the policy forfeited, we entertain no doubt. It is the contract between the parties that such an act on the part of the assured would work a forfeiture. But the grave question in the case is, whether the appellant did not waive the forfeiture, or whether the company is not now, by the acts of its agents, estopped from denying that they assented to the alienation of the property to Adam Stanton.

In discussing this branch of the case, we are not inclined to attach much importance to the suggestion that this is a mutual company, and that the appellee is a member thereof. By section 1 of amendment to the charter, passed February 13, 1863, (Private Laws, p. 202,) it is provided that section 8 of the original charter be so amended, that "Any party applying for insurance, for one year or less time, may pay a definite sum of

money for such insurance in lieu of a premium note." While it is true this company is organized on the mutual plan, this particular transaction does not seem to have any element of mutuality. In this instance, a sum certain was taken for the insurance effected on the property, and it does not appear, from anything in the record, that any premium note was ever given. It would seem, that a party insuring under this provision of the amended charter, does not become a member of the company, and stands in no different relation thereto than to any stock company. The policy sued on was undoubtedly issued under this provision. So far as the appellee is concerned, the appellant in this transaction was no more than a stock company, and he occupied no peculiar relation to it. The law, under such circumstances, would impose upon him no higher or greater duties than if the insurance had been effected in a stock company.

That the company's local agents were notified of the sale of the insured property to Adam Stanton, at the date of the transaction, does not admit of a doubt; and notice to the agents must be regarded as notice to the company. They were applied to for their advice and consent as to the sale, and freely gave it, and promised the parties the policy should be good until it could be obtained from St. Louis, and the proper indorsement entered thereon. Upon this distinct understanding the sale was completed, and the conveyance executed and delivered. Shall the company now be permitted to retract its consent, and insist upon a forfeiture under the strict provisions of the contract? Had no consent been given by the agents of the company when applied to for that purpose, it is more than probable the parties would have stopped their negotiations until the formal consent could have been obtained. But, relying on the faith of the promises of the agents of the company that the policy would remain "good," the parties were induced to complete the sale. If, for the doing of that which the company, by their agents, consented that the assured should do, it shall be held to be a forfeiture of the policy, it

would be to permit the company to practice a fraud upon the assured, and thereby relieve themselves from the payment of the risk.

The property was transferred to Adam Stanton with the knowledge and consent of the agents of the appellant, and with the distinct agreement to keep the policy good until it should be brought in for the proper indorsement. The proof shows that all the parties acted in good faith, and relied implicitly on the agreement of the agents of the company. The company knew that the property covered by the policy had been thus transferred to Adam Stanton in ample time to have declared a forfeiture and cancel the policy before the happening of the loss. This, they had a perfect right to do. They did not choose to exercise this power, but rather chose to retain the appellee's money paid for the premium, and carry the risk, notwithstanding the property had been sold contrary to the terms and conditions of the policy. They deliberately elected, with a full knowledge of all the facts, to pursue this course, and ought to be held to such election.

The provisions of the fifteenth condition, that the policy should cease and be void in case of the alienation of the property, were inserted for the benefit and protection of the company, and no reason is perceived why the company may not waive that condition as well as any other restriction on the assured inserted in the contract for their benefit.

The cases are numerous where persons have been held to have waived provisions and conditions inserted in contracts, for their special benefit. Where such waiver distinctly appears, the reasonable rule of law is, that the party will be estopped from insisting upon that which is inconsistent with what he has said and done, and which affects the rights of others. It is in such cases that the doctrine of estoppels *in pais* finds its just application. The very object to be attained is to prevent injuries from acts and representations which have been acted on, if a party should be permitted to retract. This equitable rule was recognized by this court, in its application to insurance

companies, in Wetmore's case, *supra.* The same doctrine has repeatedly been held by courts of the highest authority, to apply to mutual insurance companies, as well as to stock companies. *Peck* v. *New London Insurance Co.* 22 Conn. 575 ; *Sheldon* v. *Connecticut Life Insurance Co.* 25 Conn. 207 ; *Benton* v. *The American Mutual Life Insurance Co.* 25 Conn. 543 ; *Wing* v. *Harvey,* 27 Eng. Law and Eq. Reports, 140 ; *Buckbee* v. *U. S. Insurance, Annuity and Trust Co.* 18 Barb. 541 ; Ang. on Insurance, sec. 343.

The case seems to have been fully tried on its merits, and in view of all the evidence, we are of opinion that substantial justice has been done, and the judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE WALKER dissents.